■ In the Matter of WILLIAM P. CAPOTE, Petitioner, v BARBARA A. DeBUONO, as Commissioner of the New York State Department of Health, Respondent. [659 NYS2d 357] —Crew III, J. Proceeding pursuant to CPLR article 78 (initiated in this Court pursuant to Public Health Law § 230-c [5]) to review a determination of the Administrative Review Board for Professional Medical Conduct which revoked petitioner's license to practice medicine in New York.

At all times relevant to this proceeding, petitioner was a physician engaged in the practice of obstetrics and gynecology. Following a decision by the State Department of Social Ser-

---

* A psychiatric disorder which manifests itself with an alteration or loss of physical function.

vices excluding petitioner from participating in the Medicaid program for a period of five years,[1] the State Bureau of Professional Medical Conduct charged petitioner with, *inter alia*, professional misconduct as defined by Education Law § 6530 (9) (c) (hereinafter the first specification).[2] At the conclusion of the administrative hearing that followed, a Hearing Committee of the State Board for Professional Medical Conduct determined, *inter alia*, that petitioner was guilty of professional misconduct as outlined in the first specification of the statement of charges and, as to penalty, limited petitioner to the practice of obstetrics and gynecology and placed him on probation for five years.[3] The Bureau of Professional Medical Conduct thereafter successfully sought review by the Administrative Review Board for Professional Medical Conduct (hereinafter ARB), which determined that petitioner's conduct with respect to the first specification was sufficiently egregious to warrant revocation of his license to practice medicine. Petitioner subsequently commenced this CPLR article 78 proceeding seeking review of the ARB's determination.[4]

Petitioner's primary argument on review is that the penalty of revocation is too severe. We cannot agree. "Whether the penalty of revocation of petitioner's license should be sustained depends upon whether it is so incommensurate with the offense as to shock one's sense of fairness" (*Matter of Adler v Bureau of Professional Med. Conduct*, 211 AD2d 990, 993). Here, the record establishes that petitioner, among other things, billed the Medicaid program for tests that never were performed, ordered unnecessary laboratory tests and failed to address numerous abnormal test results reported for the patients that he treated. Under these circumstances, we can-

---

**1.** The charges stemmed from petitioner's care and treatment of certain patients at a clinic during a 2½-month period in 1991, during which time petitioner essentially practiced general medicine. The Department's determination in this regard was confirmed by the Second Department (*see, Matter of Capote v Dowling*, 221 AD2d 437).

**2.** Education Law § 6530 (9) (c) defines professional misconduct as: "Having been found guilty in an adjudicatory proceeding of violating a state or federal statute or regulation, pursuant to a final decision or determination, and when no appeal is pending, or after resolution of the proceeding by stipulation or agreement. and when the violation would constitute professional misconduct pursuant to this section".

**3.** The remaining two specifications of misconduct were not sustained. The decision to limit petitioner's practice to obstetrics and gynecology apparently stemmed from the fact that the underlying misconduct occurred while he was practicing general medicine.

**4.** Ultimately, petitioner's request for a stay pending the outcome of this proceeding was denied.

not say that the ARB's determination to impose the penalty of revocation is not supported by the record. Petitioner's remaining contentions have been examined and found to be lacking in merit.

Mikoll, J. P., Mercure, White and Peters, JJ., concur. Adjudged that the determination is confirmed, without costs, and petition dismissed.

